```
              UNITED STATES DISTRICT COURT
               DISTRICT OF NEW HAMPSHIRE
```

Medline Industries, Inc.

    v.                                        Civil No. 1:09-cv-301-JL
                                              Opinion No. 2010 DNH 040

9121-3140 Quebec, Inc., et al.

**O R D E R**

This case involves the assessment of damages and other remedies following the entry of default under Fed. R. Civ. P. 55(a) against the defendants, Thomas Wong and 9121-3140 Quebec, Inc. Plaintiff Medline Industries, Inc. sued the defendants for violations of the Telemarketing and Consumer Fraud Abuse Prevention Act, 15 U.S.C. §§ 6101 et seq., and the Lanham Act, 15 U.S.C. §§ 1051 et seq. This court has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark).

On November 24, 2009, this court entered an order granting Medline's motion for judgment on the pleadings, or alternatively, for entry of default and instructed Medline to proceed under Fed. R. Civ. P. 55 or other appropriate authority to establish damages. After reviewing the parties' submissions and supplemental briefing, the court grants Medline's request for permanent injunction, damages, and attorneys' fees and costs, and awards Medline a judgment in the amount of $173,338.35 in damages and $16,343.07 in attorneys' fees and costs.

I.  **APPLICABLE LEGAL STANDARD**

If a defendant fails to answer or otherwise defend the claims brought against him, the court will enter default in the plaintiff's favor.  See Fed. R. Civ. P. 55(a).  Once default is entered, the defendant is "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002) (quotation omitted); see also Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985).  Upon entry of default, "[d]iscretion as to the judgment or the need for a hearing on damages is vested with the district court." Ortiz-Gonzalez, 277 F.3d at 64 (citing Pope v. United States, 323 U.S. 1, 12 (1944)).  "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."  Pope, 323 U.S. at 12.

II.  **BACKGROUND**

By virtue of the default, the facts alleged in Medline's complaint are "taken as true."  Brockton Sav. Bank, 771 F.2d at 13.  Medline is a leading manufacturer and distributor of medical

products and has used the trademark MEDLINE in connection with its products since 1968.  Medline owns numerous trademark registrations for the MEDLINE mark issued by the United States Patent and Trademark Office and enjoys a strong reputation and customer goodwill as a provider of high-quality medical products.

    Beginning in 2006, Wong initiated the "Medline Savings" campaign, under which telemarketers offered "pharmaceutical discount packages" to consumers throughout the United States.  The telemarketers told the consumers, many of whom were elderly, that if they agreed to purchase the packages, a one-time charge of $398 would appear on their bank statements under the name Medline Savings.  After the $398 was debited, Wong fulfilled the orders by sending a "pharmaceutical discount package" bearing the name "Medline" or "Medline Savings" that was actually nothing more than promotional materials and an application form for a Canadian pharmaceutical website.  Wong committed these acts without Medline's consent and with full knowledge of Medline's prior use and ownership of the MEDLINE mark.  Wong, his company 9121-3140 Quebec, Inc., and the other parties involved in the fraudulent "Medline Savings" campaign generated at least $1,000,000 from the scheme.

On September 4, 2009, Medline filed its complaint against the defendants in this court.[1]  On October 23, 2009, defendants filed a document purporting to be an answer that was actually a letter to the court detailing defendants' financial condition and attempts to settle the matter with Medline's counsel.  During the preliminary pretrial conference on November 24, 2009, Wong expressed that he did not wish to defend the case and admitted that regardless of any desire to defend it, he had no defense.  This court then entered the November 24, 2009 order granting Medline's motion for judgment on the pleadings, or, in the alternative, for entry of default.  Medline subsequently filed a motion for assessment of damages, costs, and attorneys' fees, which has been fully briefed by both parties, including supplemental briefing requested by the court on the issue of trademark counterfeiting and treble damages.

---

[1] Medline previously sued the defendants, and various other parties in the United States District Court for the Northern District of Illinois for their involvement in the "Medline Savings" campaign, but defendants were dismissed for lack of personal jurisdiction.  After defendants' dismissal, the remaining defendants defaulted and judgment was entered against them, awarding Medline over $4,000,000 in damages and attorneys' fees.

**III. ANALYSIS**

Medline seeks injunctive relief, monetary relief, and costs and attorneys' fees under the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 et seq., and the Lanham Act, 15 U.S.C. § 1051 et seq. Because Medline seeks treble damages and only the Lanham Act provides for them, the court will analyze Medline's requests under the Lanham Act.

**A.   Injunctive relief**

Medline seeks a permanent injunction under the Lanham Act. See 15 U.S.C. § 1116. Defendants have not objected to and are "more than happy to agree to" this request. Thus, Medline's request is granted and the defendants are hereby permanently enjoined from using the trademark MEDLINE, or any other confusingly similar trademark, in connection with the sale, offering for sale, advertisement or promotion of any goods or services not originating with Medline, including but not limited to defendants' telemarketing activities.

**B.   Attorneys' fees and costs**

The Lanham Act provides that "the court in exceptional cases may award reasonable attorneys fees to the prevailing party." 15 U.S.C. § 1117(a). A case may be considered exceptional where the acts of infringement were "malicious, fraudulent, deliberate, or

5

willful," and attorneys' fees may be awarded "when equitable considerations justify such awards."  Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F.3d 23, 31 (1st Cir. 2002) (quoting S. Rep. 93-1400, at 5 (1974), reprinted in 1974 U.S.C.C.A.N 7132, 7133) (quotation omitted).  Courts look at the totality of the circumstances when determining if a case is exceptional, and a showing of bad faith or fraud is not required as a precondition to an award of attorneys' fees.  Id. at 32-33.

Wong argues that he did not deliberately use Medline's trademark and contends that his and 9121-3140 Quebec's involvement in the "Medline Savings" campaign consisted only of receiving sales commissions.  Taking the factual allegations in the complaint as true, however, see Brockton Sav. Bank, 771 F.2d at 13, this case qualifies as exceptional under § 1117(a).  The defendants do not, and, by virtue of their default, cannot deny their involvement in a sophisticated scheme that defrauded senior citizens using Medline's trademark.  Wong's arguments and unsupported conclusory statements that the use of Medline's trademark "was not in my control" and that it was "simply not true" that he deliberately used the trademark cannot overcome the factual allegations in Medline's complaint, and therefore Medline is entitled to attorneys' fees and costs.

In determining the amount of attorneys' fees, this court applies the "lodestar method":  multiplying the hours reasonably

spent on the case by the hourly rate prevailing in the community. Holder v. Gienapp, 2007 DNH 089, 1 (DiClerico, D.J.) (citing Bogan v. City of Boston, 489 F.3d 417, 426 (1st Cir. 2007)). The party seeking the expenses bears the burden of showing their reasonableness. See id. Under the lodestar method, "a court usually should begin with the attorneys' contemporaneous billing records. The court should then subtract hours that are duplicative, unproductive or excessive and multiply the reasonable hours billed by the prevailing attorney rate in the community." Bogan, 489 F.3d at 426 (citing Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001)).

Medline contends that it is entitled to $19,466 in attorneys' fees and $1,694.07 in costs, totaling $21,160.07. In support of these figures, Medline's lead and local counsel submitted declarations and detailed billing records. These records show that Medline's counsel expended a total of 77.1 hours on this matter. The court finds that these hours were reasonably spent.

As for the hourly rate, the court must fix the rate "according to the prevailing market rates in the relevant community, that is those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 955 (1st Cir. 1984) (quotation omitted). In the billing records

submitted by Medline's Chicago counsel, the hourly rates were listed at $420, $260 and $250.[2] Attorney Marvel submitted a declaration stating that "based on my experience . . . it is my belief that these rates are reasonable and customary for attorneys in the Chicago area who provide legal services in complex intellectual property matters." In the billing records submitted by Medline's local counsel, the hourly rates were listed at $240 and $210. Attorney Kevin E. Verge submitted a declaration stating that "[i]t is my belief that these rates are reasonable and customary for attorneys in New Hampshire who provide legal services in similar complex matters."

"While an attorney may inform the court's analysis by providing evidence of [their] customary billing rate and of prevailing rates in the community, the court is not obligated to adopt that rate. Moreover, the court is entitled to rely upon its own knowledge of attorney's fees in its surrounding area in arriving at a reasonable hourly rate." Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996) (citations omitted). Here, the hourly rates submitted by Medline's counsel are slightly higher than the prevailing rates in this community for similar services by comparable attorneys. See, e.g., N.H.

---

[2]Attorney Janet A. Marvel only charged $420 per hour for 1.5 hours of work. The remainder of her time was billed at $250 per hour.

Bar Ass'n, 2006 Statistical Supplement 4, 11 (2006) (survey results from 2004-2005 indicating that the most typical hourly rate charged by Merrimack County attorneys was between $151 and $175). This is a fairly complex case, though, and some time has passed since the cited survey. On balance, this court concludes that an hourly rate of $190 is reasonable and appropriate for the work done in this case.[3] Multiplying that rate by the reasonable number of hours spent by Medline's counsel (77.1) yields an attorneys' fee award of $14,649. Coupled with the $1,694.07 in costs, Medline's total award of attorneys' fees and costs is $16,343.07.

## C.  Disgorgement of profits

Medline seeks an accounting of defendants' profits, instead of actual damages. Under § 1117(a) of the Lanham Act, a prevailing plaintiff is "entitled . . . to recover (1) defendant's profits." 15 U.S.C. § 1117(a). When determining whether to award a plaintiff an accounting of defendant's profits, "[m]echanical rules are of little aid in [the]

---

[3]The fact that Wong did not argue for a lower rate or even object to the rates that Medline's counsel submitted further substantiates the court's ruling. See Tamko Roofing Prods., 282 F.3d at 34 ("[G]iven [defendant's] failure to furnish the district court with any reasons why [plaintiff's] fee application should have been pared down, we do not think that this is an issue that requires further review.").

analysis." Tamko Roofing Prods., 282 F.3d at 38. "An accounting of profits is never automatic," and courts "carefully retain the right to withhold the remedy if, in view of the overall facts and equities of the case, it is not appropriate." 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:59 (4th ed. 1994 & Supp. 2009); see also Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 131 (1947) ("[T]he rule governing an accounting of profits . . . does not stand for the proposition that an accounting will be ordered merely because there has been an infringement.").

"An accounting of defendant's profits may be awarded in a trademark infringement action subject to the principles of equity." Tamko Roofing Prods., 282 F.3d at 35 (quotation omitted). Equity must take into account the purposes served by the Lanham Act, specifically "where the owner of a trade-mark has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its misappropriation by pirates and cheats." Id. at 38 (quoting S. Rep. No. 1333 (1946), reprinted in 1946 U.S.C.C.S. 1274, 1274). Here, it is within the "equitable nature of the court's remedial power," id, to award Medline profits because defendants willfully infringed Medline's trademarks.

In default judgment cases in the trademark context, if the plaintiffs plead willfulness in their complaint, the court has the option to imply a finding of willfulness into the damages calculation.  See Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("[B]y virtue of its default, [defendant] has admitted [plaintiff's] allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to [plaintiff's] rights."); Techs., S.A. v. Cyrano, Inc., 460 F. Supp. 2d 197, 204 (D. Mass. 2006) ("[Plaintiff] pled that [defendant's] violation was deliberate and knowing.  A default judgment of willfulness, therefore, could be appropriate."); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, the [defendant's] infringement is deemed willful.").  A finding of willfulness is appropriate here.  Taking the factual allegations in the complaint as true, defendants knew of the MEDLINE trademark and intentionally used the mark as part of the fraudulent "Medline Savings" campaign.  They conducted the campaign with the hope of deceiving consumers into believing that they were purchasing a product or service sold or endorsed by Medline, and succeeded in doing so.  Indeed, their actions led law enforcement officials and consumers to contact Medline about the "Medline Savings" scheme, believing it was responsible.

Additionally, the First Circuit has articulated three justifications for awarding an accounting of defendant's profits: "(1) as a rough measure of the harm to plaintiff; (2) to avoid unjust enrichment of the defendant; or (3) if necessary to protect the plaintiff by deterring a willful infringer from further infringement." Tamko Roofing Prods., 282 F.3d at 36. Medline is entitled to an accounting of defendants' profits under the second recognized rationale: to prevent the defendants' unjust enrichment. If Wong were not required to pay anything as a result of his default, he would be unjustly enriched from the "Medline Savings" campaign. In light of these reasons, Medline is entitled to an award of defendants' profits.

**D.  Amount of profit award**

Without the benefit of discovery, Medline has presented evidence establishing that the defendants received at least $115,558.90 from the "Medline Savings" campaign. Under § 1117(a), Medline is required to prove defendants' sales, while the burden is on the defendants to prove any deductions from that figure. 15 U.S.C. § 1117(a). "If the infringer provides no evidence from which the court can determine the amount of any cost deductions, there is no obligation for the court to make an estimate." 5 McCarthy, supra, § 30:66. Any doubts about the

12

actual amount of profits are resolved against the infringer. Id. Medline presented transaction records obtained from Wong's financial managers showing every incoming and outgoing payment related to the "Medline Savings" campaign.[4] These statements show that defendants received at least $115,558.90 from the campaign. See Ex. A to Piccolo Decl. Wong's only argument for deduction is that while the financial statements indicated he received $115,558.90, "this obviously does not mean the company generated a profit" of that amount. While this argument has some superficial, common-sense appeal, Wong presents no facts to support it, and thus has not sustained his burden. On this record, and under this standard, the court cannot conclude that the amount of Medline's award of profits is any less than $115,558.90.

Wong also argues that the amount he and his company received from the "Medline Savings" campaign is actually $82,594.83 because the campaign allegedly ended on April 20, 2007. He bases this argument on items called the "customer database and lead lists"--documents he claims Medline possesses but did not use to calculate its profits figure. Wong did not present copies of

---

[4] Medline did not obtain these records through traditional discovery. It obtained them through a subpoena issued to the Denarius Financial Group during the previous suit in the U.S. District Court for the Northern District of Illinois. See supra note 1.

13

these documents in any of his filings regarding the damages assessment.  In his surreply, Wong included a table of the "record of funds received through the Medline Savings Campaign for 9121-3140 Quebec Inc" that lists the last payment date as April 20, 2007.  Defs.' Surreply at 2.  Wong does not explain where the table came from.  He merely alleges that "[s]ometime I believe in July or August of 2008, my lawyer at that time sent plaintiff on behalf of 9121-3140 Quebec Inc., the customer database and lead lists . . . .  Plaintiff seems to have forgotten this."  Id. at 1.  Wong asserts that the last date that 9121-3140 Quebec Inc. received a sales commission was April 4, 2007.  He presents no evidence or sworn testimony to support either this assertion or the existence of the customer database and lead lists.  Because Wong claims to rely on the customer database and lead lists, yet does not produce copies of them in support of his arguments, and because he makes only a bare assertion that the "Medline Savings" campaign ended on April 20, 2007, Wong has failed to demonstrate that the campaign ended on April 20, 2007.

Medline calculated the $115,558.90 figure based on transaction records it obtained from Wong's financial managers, and the defendants' default put Medline in the position of proving profit-based damages without traditional discovery.  The transaction records show that 9121-3140 Quebec Inc. and Wong

received payments as late as August 2007. Medline had no way of knowing exactly when the "Medline Savings" campaign ended and Wong has failed to show that it ended on April 20, 2007. Therefore, Medline's conservative calculation of defendants' profits, in the amount of $115,558.90, is proper.

Finally, Wong contends that he should not be held jointly and severally liable with 9121-3140 Quebec for the infringement. "[T]he law is well settled that a director, officer, or employee of a corporation can be held jointly and severally liable with the corporation if that person has direct involvement in the infringing activities of the corporation." Foxworthy v. Custom Tees, Inc., 879 F. Supp. 1200, 1206 (N.D. Ga. 1995) (emphasis omitted); see also AARP v. Am. Family Prepaid Legal Corp., 604 F. Supp. 2d 785, 799-800 (M.D.N.C. 2009)("In trademark infringement cases, a non-resident employee-defendant may be held jointly and severally liable with that corporation if the individual defendant has direct involvement in the infringing activities of the corporation.") (quotation omitted). Thus, because Wong played a key role in the infringing activities, he can be held jointly and severally liable for the infringement.

**E.     Treble Damages**

In its memorandum in support of assessment of damages, costs and attorneys' fees, Medline requested that the award of defendants' profits be trebled under 15 U.S.C. § 1117(b).  See Pl.'s Mem. at 8.  In a one-sentence request, Medline stated "[w]here a defendant knowingly infringes a mark, as Wong has done here, the plaintiff is entitled to a trebling of this disgorgement.  15 U.S.C. § 1117(b)."[5]  Because Medline appeared to be relying on a subsection of § 1117 involving use of a counterfeit mark, and because Medline did not elaborate beyond one sentence about why it believed trebling was warranted, the court asked for supplementary briefing on the issue in an order dated January 28, 2010.  In its supplementary memorandum, Medline clarified that it was not alleging trademark counterfeiting and requested that the court treble the award under § 1117(a).

The specific enhancement provision of § 1117(a) states:

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.

---

[5]Section 1117(b) is a remedies provision of the Lanham Act that provides mandatory trebling of an award when the defendant intentionally uses a counterfeit mark.  15 U.S.C. § 1117(b).

16

15 U.S.C. § 1117(a).  While our court of appeals has not yet addressed the issue, the Federal Circuit has explicitly held that an award of defendant's profits cannot be trebled under § 1117(a).  See Nutting v. RAM Sw., Inc., 69 Fed. Appx. 454, 458 (Fed. Cir. 2003) ("The statute permits a court to award up to three times the plaintiff's 'actual damages' only; this language does not apply to an award of defendant's profits."); Thompson v. Haynes, 305 F.3d 1369, 1380 (Fed. Cir. 2002) ("As for profits, however, the court is not authorized to award up to three times the amount proved."); see also Dialogo, LLC v. Bauza, 549 F. Supp. 2d 131, 137 (D. Mass. 2008) ("[T]he Federal Circuit has made clear that, even if enhancement were appropriate, the amount to be trebled under [§1117(a)] of the Lanham Act cannot include lost profits." (citing Thompson v. Haynes, 305 F.3d at 1380)).  But see PepsiCo v. Triunfo-Mex, Inc., 189 F.R.D. 431, 432 (C.D. Cal. 1999) ("[Section] 1117(a) confers authority on the court to treble defendant's profits . . . ."); Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd., 175 F.R.D. 658, 663 (S.D. Cal. 1997) ("Pursuant to 15 U.S.C. § 1117(a), the Court trebles the $200,000 in estimated profits by the Defendant . . . .").  The court finds the Federal Circuit's reasoning persuasive and declines to treble the award of $115,558.90 of defendants' profits.

   Nonetheless, the court still may enhance an award of profits under § 1117(a) as it sees fit.  In cases involving knowing and

17

willful infringement, courts may enhance damages accordingly. See Taco Cabana Int'l, Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1127 (5th Cir. 1991) ("We must respect the fact that section 35 endows the district court with considerable discretion in fashioning an appropriate remedy for infringement.  An enhancement of damages may be based on a finding of willful infringement, but cannot be punitive.").  Wong deliberately used Medline's trademark to deceive elderly consumers into buying fraudulent pharmaceutical discount coupons.  Medline's reputation has been harmed and the goodwill associated with the MEDLINE trademark has suffered as a result of this scheme.  Therefore, the court elects to use its discretionary power under § 1117(a) to enhance the award of defendants' profits by 50 percent, resulting in a total award of $173,338.35.

## IV.   **CONCLUSION**

For the foregoing reasons, Medline's motion for assessment of damages, costs and attorneys' fees[6] is GRANTED.  The court awards Medline attorneys' fees and costs in the amount of $16,343.07, and $173,338.35 in defendants' profits.  The court permanently enjoins defendants from using the trademark MEDLINE, or any other confusingly similar trademark, in connection with

---

[6]Document no. 15.

the sale, offering for sale, advertisement or promotion of any goods or services not originating with Medline, including but not limited to defendants' telemarketing activities.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:   March 5, 2010

cc:   Janet Marvel, Esq.
      James M. Monahan, Esq.
      Christopher H.M. Carter, Esq.
      Kevin E. Verge, Esq.
      Thomas Wong, pro se